First case, 1-10-0-0-8-6, Texas v. Lewis. Good morning, Mr. Gaines, members of the court. My name is Marty Spiegel, and I represent the employer, Pactiv Corporation. This case comes before you today on our appeal of the Commission's decision modifying the decision of arbitrator Williams, who awarded Mr. Luna 75 percent of a hand by increasing the award to 50 percent loss of use of the person. I would submit to you today that the employee also agrees this decision is erroneous, as he's repeatedly argued in the brief that it was, although I don't believe a cross-appeal was filed. Mr. Luna did sustain a serious injury. As a result of this accident in May 2004, he lost his right index ring and middle fingers. At the time of the accident, he was an extrusion operator, operating machine, on a line where he also had to check products and lifting products weighing 70 to 80 pounds. The tools that he had to use in his job included pliers, screwdrivers, air guns, and micrometers. Well, we're familiar with the facts. Let's get to the ball and the issues. Okay. I think what you have to look at is where the Commission's decision, what it says versus what it doesn't say. They specifically indicate that there is no indication that the continued employment of the petitioner as an extrusion operator is not bona fide. They also say that although he works slower than his coworkers, he's doing all of the elements of his job, and he's been doing that now, well, at the time of the review hearing was two years, now it's four years. He's never been reprimanded for performance or productivity. That's all on the record. They also concluded that the petitioner's injuries, or they indicated that we can't conclude that the petitioner's injuries prevent him from performing the usual and customary line of employment or that his services don't merit the compensation he's being paid. But the Commission said we don't think the award of 75% loss of use of the hand adequately compensates Mr. Loomis. And I'm not saying he didn't have a serious injury, but it's a scheduled injury. We have to look at the language in Section 88 first. The employee shall receive compensation for a period of TTD and shall receive a further period for the specific loss mentioned herein, but shall not receive any compensation under other provisions of the Act. We have an amputation of the right index finger under 82, the right middle finger under 83, and the right ring finger under 84. We're not quibbling that they could make an award based upon percentage loss of use of a hand because he lost two or more digits in the accident. But what we do have an issue with is the Commission awarding Mr. Loomis 250 weeks of disability benefits for the 50% loss of use of a person, when if his hand, he had 100% loss of use of that hand, he'd have only been awarded 190 weeks of permit partial disability benefits. Do you have any case law to support their proposition? Are you just going by the plain language or interpretation of the language of the Act? I am going principally by the plain meaning of the interpretation of the Act, Your Honor, but I also think part of it has to do with the fact that it doesn't fit under any of the subsections of Section 8D2. 8D2 talks about if, as a result of the accident, the employee sustained serious and permanent injuries not covered by paragraph C and E of Section 8. That's not the case here. We have three amputated fingers. We have an injury to the thumb. They have made an award, the arbitrator made an award pursuant to loss of use of a hand. The second subsection of 8D2 says, or if the claimant sustained injuries covered by H.C. or H.E., he shall have sustained other injuries which don't incapacitate him from pursuing the duties of his employment. Again, this is in the section that applies here because while we have injuries that fall under Section 8E, we don't have any other injuries. We don't have any loss of income. We don't have an injury to any other body part. The third subsection would be if the injuries, excuse me, partially incapacitate him from pursuing the duties of his usual and customary line of employment but don't result in an impairment of earning capacity. Again, not the case here because he is doing his job. He's been doing his job. He does it a little bit slower, but he has seniority. He hasn't been disciplined, and he hasn't been written up. I think what has happened here is the commission essentially found that the award made by arbitrator Williams, in their mind, wasn't enough money. And in doing so, they appear to have decided that the intent of the legislature, as it applies to specific losses, aren't enough. They've taken over the role of the legislature by enacting this decision. Not only that, they didn't specify the basis for the award under 8D2. They didn't indicate that he couldn't do his job. They didn't indicate that his condition prevents him from pursuing his usual and customary line of employment. In summary, Judge, we feel that the decision is against the manifest way to the evidence and contrary to law and should be remanded with instructions to reinstate the arbitrator's award. Thank you. Counsel, please. Mr. Stegall, may it please the Court. My name is George Gaines on behalf of Mr. Luna, the defendant. The policy issues here mitigate in favor of the petitioner. Wage loss awards, whether partial, as in this case, as we contend, or complete, are the preferred method of compensating people for injuries at work, have been for decades, beginning in Europe all the way to today. Now, sure, there's a schedule loss for those members that are injured and there's no wage loss. And also for disfigurement, another type of case, if you will. You might recall that we here in Illinois began with 8D. That was the section of the Act back in the day. 8D1 was, well, 8D was reclassified as 8, renamed as 8D1, when they brought in 8D2 to compensate for those sort of odd sort of injuries that don't really fall under specifics. But the preference is to compensate people for a demonstrated wage loss. That's why we've got this sort of tortured reading in 8D1, that the only honest interpretation of which will allow for this, for a carving out of that section of any wage loss cases. That's clear, despite what Lucietto, despite what the commission, or how the commission interpreted Lucietto. Well, what evidence in this case supports the argument that he was entitled to the wage differential award? What is the evidence that supports that? The testimony or the findings of James Radtke. And also the findings of the industrial commission as well as the circuit court. Well, the claimant was performing, when he got back to work, he was performing the same job duties, albeit slower, correct? After that first year off, please recall also, and I should have mentioned this in my brief, they didn't take him back for a year after he had reached maximum medical improvement. I don't think they knew what to do with him. Finally, they get him in and they put him back on the same machine. You can read into that what you want, but to answer your question, whether or not this man shows up and works the same position, as we know, earnings, nothing more, is really the issue here. His earning power. Is he earning the same as he did before? No, sir. Why is that? Because out there in the real world, not just at PACTV, machine operators need two hands, not just one of these, but two of these, not this on their dominant hand. So what you're saying is let's ignore what he's really earning today and let's speculate as to what, if he didn't have that job, he'd be earning elsewhere? Or whether he could even perform the duties elsewhere? No, what I'm saying is let's not ignore what his earning power is. Let's not be swayed by what he happens to be paid at this point in time. Okay? Let's not be swayed by, well, by calling it a bona fide offer, by considering what he's doing now as doing his job. Okay, what evidence did you put on that we could find in the record that suggests that it's only here that he's going to earn this wage? James Radke's evidence. He's the only Volk rehab expert that covered this. Only Radke was qualified to provide and actually addressed the issue of Mr. Luna's earning capacity. The respondent's Volk rehab agent never addressed it. She stopped at this point. He's there. He's showing up for work. He's getting the same money and a little more. So there's no Volk rehab issue. There's no earning loss issue. Well, you know, that's not what we're seeing in copper weld, for example, decided about sometime last year in June, I think it was, which I wish I could have cited in this brief. Also, Dr. Carroll's opinion, the respondent's IME, he's not qualified to render opinions, nor did he render an opinion on the earning power. I have some difficulty. You're not arguing that he should have received a wage differential award, are you? Oh, I absolutely am arguing he should receive a wage differential. I thought you didn't appeal. Well, that's right. Mr. Luna. How do you argue for something? I would think you would want to argue that the commission decision was correct and not put in something that you didn't even appeal. Because my client wanted the $40,000 under 8D2. Why didn't you appeal? I was instructed by my client not to. That's his call, not mine. This man can't cut his food. He can't button. This is what he's got on his right hand. No dispute that this position is heavy work. No dispute whatsoever. And he's always capable of. I'm at a loss here. I'm really at a loss here procedurally. Your client has a better award under 8D2, am I correct, than the arbitrator's original award, scheduled award, am I correct? That's right. Okay. However. So you're facing an opponent now who's saying let's go back to that scheduled award, which if would prevail, your client loses money, correct? Right. But as we've offered. And you're not here to support an award that was more generous to your client? Here's the concern. I mean, it's a practical question. I've got a real concern there, ethically even. Oh, no, wait, wait. The better and more proper award would be a wage loss. And it would have been proper to proceed with a proper appeal on that issue. Mr. Luna told me he'd rather take the $40,000 than wait any longer. The man had bills to pay. What do you want us to do? Find that this man's compensation should be under Section 8D1. So if active. But you didn't even appeal it. You're asking, if I look at your briefs correctly the way it should be, you're asking us to affirm the commission's decision. But your argument goes 100 miles away and is of no help. We don't know whether to affirm the commission or not based on what you say. The law would not support affirming the commission's decision. But you didn't appeal. Keep that in mind and don't have your argument talking about what it should have done when you have said, by your briefs anyway, we should affirm the commission. Well, I would have had an ethical problem if I chose to appeal it contrary to my client's wishes. But you did not appeal. Right. Please stop that or sit down. Counsel, please. Just briefly, Your Honors, Mr. Luna is making more money. He has seniority. He actually bid into a weekend ship that he wanted. That evidence is all in the record? That's all in the record. He was making $1,351 instead of $1,130 something at the time of arbitration. He testified that he bid into the job. He's a second man in seniority on the weekend ship. Are all of the losses for which he was compensated scheduled in 80? Yes. So there's no injuries for which he was compensated that aren't scheduled in 80? That's correct. And as far as Mr. Radke's opinions, Mr. Radke's opinions have to be taken into consideration in light of the fact that Mr. Radke also said that Mr. Luna couldn't be doing the job that he's been doing now for four years. I think his opinions are questionable at best. Again, we'd ask that you reverse the commission's decision and reinstate arbitrator Williams. Thank you. The court will take the matter under its guidance for disposition.